UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| JAN BLOM, et al.,<br><br>   Plaintiffs,<br><br> v.<br><br>UBS BANK USA, et al.,<br><br>   Defendants. | Case No. 22-cv-03172-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Re: ECF No. 24] |

This case arises out of the tragic death of 17-year-old Linus Blom from a drug overdose. Three days after Linus's father, Plaintiff Jan Blom, called his bank to inform it that his debit card was lost or stolen, he and his wife, Plaintiff Ida Irena Kolankiewicz-Blom, discovered Linus dead in his bed. Police informed them that Linus had withdrawn money with their debit card and used it to buy drugs. The bank had failed to cancel the debit card when Mr. Blom called. Plaintiffs bring causes of action against Defendants UBS Bank USA and UBS Business Solutions LLC (collectively "UBS") for (1) wrongful death; (2) negligent infliction of emotional distress; and (3) breach of contract.

Before this Court is UBS's Motion to Dismiss Plaintiffs' First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). Mot., ECF No. 24. Plaintiffs oppose. Opp'n, ECF No. 35. UBS has filed a Reply. Reply, ECF No. 41. For the reasons discussed below, UBS's Motion to Dismiss is GRANTED WITH LEAVE TO AMEND.

**I.   BACKGROUND**

Plaintiffs allege the following facts, which the Court accepts as true for the purpose of ruling on UBS's motion to dismiss. *See Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). On July 19, 2020, Jan Blom notified UBS that his debit card was lost or stolen

and requested that UBS cancel the card. First Am. Compl. ["FAC"] ¶ 11, ECF No. 16. UBS assured Mr. Blom that it would cancel the card immediately, but it failed to do so. *id.* ¶¶ 11, 14.

Between July 19 and 22, Mr. Blom's 17-year-old son, Linus Blom, used Mr. Blom's debit card to make unauthorized withdrawals from various ATM machines and to receive cash back on a purchase. *Id.* Linus obtained a total of $1,250 cash from these transactions and used the cash to purchase illicit drugs. *Id.*

On July 22, Plaintiffs discovered Linus dead in his bed. *Id.* ¶ 14. He had died from a drug overdose. *Id.* The next day, Police informed Plaintiffs that Linus had withdrawn large amounts of money with their card to buy drugs. *Id.* Plaintiffs contacted UBS, and UBS confirmed that it had not canceled the debit card despite Mr. Blom's request that it do so four days prior. *Id.*

## II.   LEGAL STANDARD

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese*, 643 F.3d at 690. However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   DISCUSSION

Plaintiffs assert three causes of action: (1) wrongful death; (2) negligent infliction of emotional distress; and (3) breach of contract. The Court addresses UBS's challenges each cause

of action in turn.

### A. Wrongful Death

"A cause of action for wrongful death is . . . a statutory claim." *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1263 (2006) (citing Cal. Code Civ. P. §§ 377.60-377.62). "Its purpose is to compensate specified persons—heirs—for the loss of companionship and for other losses suffered as a result of a decedent's death." *Id.* "The elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs." *Id.* (emphasis removed). Where, as here, plaintiff alleges that the wrongful death resulted from negligence, the complaint must contain allegations as to all the elements of actionable negligence. *See Jacoves v. United Merch. Corp.*, 9 Cal. App. 4th 88, 105 (1992). The elements of negligence are: (1) the defendant had a legal duty to use due care; (2) the defendant breached such legal duty; (3) the defendant's breach was the proximate or legal cause of the resulting injury; and (4) damage to the plaintiff. *Ladd v. County of San Mateo,* 12 Cal. 4th 913, 917 (1996).

UBS argues that Plaintiffs' wrongful death claim must be dismissed because (1) UBS did not owe a legal duty to Linus and (2) its failure to cancel Mr. Blom's debit card was not the proximate cause of Linus's death. *See* Mot. 8-11, 16-19; Reply 2-6. The Court first addresses UBS's argument regarding duty and then turns to its argument concerning causation.

#### 1. Duty

The Court first addresses UBS's argument that Plaintiffs have failed to allege the requisite duty to support a wrongful death claim based on negligence. UBS argues that Plaintiffs' wrongful death claim must be dismissed because UBS did not owe a duty to Linus Blom. Mot. 8-11; Reply 2-6. Plaintiffs do not dispute that UBS did not owe a duty to Linus, but they argue UBS owed a duty to them. Opp'n 1-2. Plaintiffs contend that UBS created this duty when it assured Plaintiffs that it would cancel their debit card. *Id.*

"Negligence involves the violation of a legal duty imposed by statute, contract or otherwise, by the defendant to the person injured, e.g., the deceased in a wrongful death action." *Jacoves*, 9 Cal. App. 4th at 105. "The existence of the element of duty is a question of law which

3

depends upon the foreseeability of the risk and a weighing of policy considerations for and against the imposition of liability." *Id.* at 107 (citing *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 588-590 (1989)).

The Court finds that Plaintiffs have failed to allege that UBS owed them a duty that would support their wrongful death cause of action. Plaintiffs have not pled facts to show that UBS owed a duty to Linus, and they do not dispute UBS's contention that no such duty exists. Plaintiffs argue that UBS created a duty to them when it assured Plaintiffs that it would cancel their debit card, but that does not save their claims. Facts pled in the FAC do not support this theory. *See Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." (emphasis in original)). Accordingly, the Court finds that Plaintiffs have failed to plead facts sufficient to support that UBS owed Linus or them a legal duty.

The Court notes that Plaintiffs' opposition appears to invoke the "negligent undertaking theory" or "Good Samaritan Rule." *See Paz v. State of California*, 22 Cal. 4th 550, 553 (2000). This theory "subsumes the well-known elements of any negligence action, viz., duty, breach of duty, proximate cause, and damages." *Id.* at 559. To the extent Plaintiffs intend to invoke this theory as the basis for the negligence element underlying a wrongful death claim in an amended pleading, they must allege facts to support each element of the theory.

### 2. Causation

The Court next addresses UBS's argument that Plaintiffs have failed to allege facts to support the requisite causation for their wrongful death claim. UBS argues that its failure to cancel Mr. Blom's card was not the proximate cause of Linus's death from a drug overdose because there were too many intervening events. *See* Mot. 18; Reply 9-11. Plaintiffs argue that any intervening act between the UBS's failure to cancel their debit card and Linus's death was foreseeable and therefore does not break the chain of causation between UBS's failure to cancel Plaintiffs' debit card and Linus's death. *See* Opp'n 2.

"Legal causation has two components: 'cause in fact and proximate cause.'" *Steinle v.*

*United States*, 17 F.4th 819, 822 (9th Cir. 2021) (quoting *S. Coast Framing, Inc. v. Workers' Comp. Appeals Bd.*, 61 Cal. 4th 291, 298 (2015)). "Although causation often presents a question of fact for the jury, 'where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact.'" *Id.* at 822 (quoting *State Dep't of State Hosps. v. Super. Ct.*, 61 Cal. 4th 339, 353 (2015) (internal quotation marks omitted)). A defendant's act is not the proximate cause of a harm, as a matter of law, where a chain of intervening events renders the connection between defendant's act and the harm too remote. *Id.*

The Court agrees with UBS that Plaintiffs have failed to show that UBS's failure to cancel their debit card was the proximate cause of Linus's death. As UBS notes, and Plaintiffs do not dispute, the intervening events between UBS's failure to cancel Plaintiffs' debit card and Linus's death were: (1) Linus obtained the debit card without Plaintiffs' authorization; (2) he obtained Plaintiffs' PIN for the card; (3) he used the card on multiple occasions to withdraw cash from an ATM and make a purchase with cash back; (4) he purchased drugs from an illegal drug dealer; and (5) he ingested a fatal quantity of illicit drugs. This long chain of events renders Linus's death too attenuated from UBS's failure to cancel Plaintiffs' debit card for liability to be imposed. *See Steinle*, 17 F.4th at 822 (act of leaving loaded pistol in car too attenuated from death of person killed by bullet from that pistol where intervening acts included "at least one criminal act (the theft [of the pistol from the car]) and at least one accident (the bullet ricocheting after [a third party] discharged the pistol)"). Plaintiffs have offered no case law to support their argument otherwise. Accordingly, the Court finds that Plaintiffs have failed to allege sufficient facts to plausibly show that UBS's failure to cancel their debit card proximately caused Linus's death.

### 3. Conclusion

As discussed above, Plaintiffs have failed to plausibly allege that UBS owed Linus or them a duty or that UBS's actions were the proximate cause of Linus's death. Plaintiffs have therefore failed to plausibly allege facts to support the negligence element of their wrongful death claim. Accordingly, Plaintiffs' wrongful death claim is DISMISSED WITH LEAVE TO AMEND.

### B.     Negligent Infliction of Emotional Distress

"The law of negligent infliction of emotional distress in California is typically analyzed . . .

by reference to two 'theories' of recovery: the 'bystander' theory and the 'direct victim' theory." *Burgess v. Superior Court*, 2 Cal. 4th 1064, 1071 (1992). "The distinction between the 'bystander' and 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff." *Id.* at 1272. "Bystander" cases are those in which the plaintiff's claim of emotional distress "is premised upon a defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." *Id.* "'Direct victim' cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff.'" *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th 182, 205 (2012).

Plaintiffs do not specify the theory under which they bring their claim for negligent infliction of emotional distress in their complaint or in their briefing. UBS argues that Plaintiffs fail to state a claim under either theory. The Court first addresses the sufficiency of Plaintiffs' pleadings under a bystander theory and then under a direct victim theory.

### 1. Bystander Theory

UBS argues that Plaintiffs fail to state a claim for negligent infliction of emotional distress under a bystander theory because Plaintiffs fail to allege that they had a sensory and contemporaneous observance of the death of their son. Mot. 19-21; Reply 11. Plaintiffs argue that sensory and contemporaneous observance of the death of their son is not a requirement of their claim. Opp'n 2.

The Court agrees with UBS. "In the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." *Thing v. La Chusa*, 48 Cal. 3d 644, 647 (1989); *see also* CACI 1621. "[T]o satisfy the second *Thing* requirement the plaintiff must experience a contemporaneous sensory awareness of the causal connection between the defendant's infliction of harm and the injuries suffered by the close relative." *Fortman v. Forvaltningsbolaget Insulan AB*, 212 Cal. App. 4th 830, 836 (2013). Plaintiffs allege that they

6

1   "discovered Linus Blom dead in his bed" and learned the next day that he had used their debit to
2   withdraw money after UBS had failed to cancel the card upon their request. 4AC ¶ 14. These
3   allegations suggest that Plaintiffs were neither at the scene of an injury-producing event at the time
4   that it happened nor aware that Linus was being injured by any such event. Plaintiffs' allegations
5   therefore do not satisfy the second *Thing* element and fail to state a claim for negligent infliction
6   of emotional distress under a bystander theory.

### 2. Direct Victim Theory

"In its decisions addressing the direct victim theory, the California Supreme Court has emphasized that there is no independent tort of negligent infliction of emotional distress." *Gu v. BMW of N. Am., LLC*, 132 Cal. App. 4th 195, 204 (2005) (quotations omitted) (collecting cases). Instead, "the tort is negligence, a cause of action in which duty to the plaintiff is an essential element." *Id.* (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 984 (1993)).

UBS argues that Plaintiffs fail to state a claim for negligent infliction of emotional distress under a direct victim theory because they do not allege facts that plausibly suggest that UBS owed them a duty to protect them from harm arising from their son's use of their debit card to purchase illicit drugs. Reply 6-8. UBS further argues that even if such a duty does exist, the Court should dismiss Plaintiffs' claims because the factors recited in *Rowland v. Christian*, 69 Cal. 2d 108 (1968), counsel in favor of excepting UBS from that duty. Mot. 11-14; Reply 8-9. Finally, UBS argues Plaintiffs' claim for negligent infliction of emotional distress also fails because Plaintiffs have not alleged facts showing that UBS's failure to cancel their debit card was the proximate cause of their emotional distress from Linus's death. Mot. 16-19, 25.

Although Plaintiffs' briefing is not clear, Plaintiffs appear to rely on the same duty argument they advanced to support their wrongful death claim. Plaintiffs appear to argue that UBS created a duty to them to protect Linus when UBS assured them it would cancel their debit card. *See* Opp'n 1-2. Plaintiffs further argue that, if given the opportunity to amend their pleadings, they can allege additional facts to show that Plaintiffs' injuries were a foreseeable result of UBS's failure to cancel Plaintiffs' debit card. *Id.* at 4-6. Finally, Plaintiffs dispute UBS's contention that the *Rowland* factors except UBS from any duty it owes to Plaintiffs. *Id.* at 6-8.

7

As explained above in the Court's analysis of Plaintiffs' wrongful death claim, Plaintiffs argue in their briefing that UBS created a duty to them when it assured Plaintiffs that it would cancel their debit card, but they have not pled factual allegations to support this theory in their operative complaint. Plaintiffs have therefore not alleged facts to show UBS owed them the requisite duty to state a claim for negligent infliction of emotional distress. As the Court finds Plaintiffs have not alleged sufficient facts to establish UBS's duty to them, the Court does not reach UBS's alternative argument based on the *Rowland* factors; however, Plaintiffs should address those factors in an amended complaint.

Also as explained in the Court's analysis of Plaintiffs' wrongful death claim, Plaintiffs have not alleged facts to support that UBS's failure to cancel their debit card was the proximate cause Linus's death. The Court therefore finds that Plaintiffs have likewise not alleged facts to support that UBS's failure to cancel their debit card was the proximate cause of their emotional distress. Plaintiffs' claim for negligent infliction of emotional distress therefore fails for this reason as well.

The Court notes that Plaintiffs have argued and provided a declaration stating that they can allege additional facts to support their theory of UBS's duty to them. *See* Opp'n 4-6. Plaintiffs have stated, for example, that they believe that Mr. Blom told UBS on July 19, 2020, when he called to cancel his debit card that "his son has mental problems and might be using the card for improper purposes, e.g., self-abuse and purchasing illegal drugs." *Id.* at 5. Although the Court is skeptical that such information would create the necessary duty in this case, it is not prepared at this point to say that amendment of the complaint would be futile. Accordingly, the Court will dismiss Plaintiffs' claims without prejudice to filing a second amended complaint.

### 3. Conclusion

As noted above, the Court finds that Plaintiffs have failed to state a claim for negligent infliction of emotional distress under either a "bystander" or "direct victim" theory. Accordingly, Plaintiffs' claim for negligent infliction of emotional distress is DISMISSED WITH LEAVE TO AMEND. If Plaintiffs file an amended complaint in which they assert a claim for negligent infliction of emotional distress, they must identify the theory under which they bring their claim

1 and allege facts to plausibly support the elements of that theory.

### C. Breach of Contract

Plaintiffs allege that UBS was "contractually obligated" to immediately cancel Mr. Blom's debit card upon notification that the card was lost or stolen, that UBS represented that it would cancel the card when Mr. Blom reported the card lost or stolen, that UBS "breached the contract by not immediately canceling the card, and that Plaintiffs suffered consequential damages as a result. FAC ¶ 19.

Plaintiffs do not identify the agreements upon which they base their claims. But UBS identifies two agreements between Plaintiff Mr. Blom and UBS Bank USA: the UBS Client Relationship Agreement and an Agreements and Disclosures booklet (collectively, the "Agreements"). *See* Mot. 5; Decl. of Kenneth G. Crowley ("Crowley Decl.") Ex. 3 ("Client Relationship Agreement") and Ex. 4 ("Agreements and Disclosures booklet"), ECF No. 24-2. UBS also identifies an Account Update Document that purports to update the Agreements and Disclosures booklet. *See* Crowley Decl. Ex. 5 ("Account Update Document"). Plaintiffs do not dispute that these are the only written agreements between the parties.

UBS contends that Utah law governs Plaintiffs' breach of contract claim because the Agreements have a Utah choice-of-law provision. Plaintiffs do not dispute UBS's contention, though they rely on both California and Utah caselaw in their argument. Accordingly, the Court will apply Utah law.

UBS contends Plaintiffs have failed to state a claim for breach of contract because (1) Plaintiffs have failed to identify a provision in the Agreements that requires UBS to cancel Mr. Blom's card upon request; (2) Plaintiffs have waived consequential damages; and (3) Plaintiffs cannot establish that the consequential damages they seek were foreseeable when the parties entered the Agreements. Mot. 21-25; Reply 12-14. UBS further argues that Plaintiffs cannot state a claim for breach of contract against UBS Business Solutions US LLC because it is not a party to the Agreements. *Id.* at 22.

The Court agrees with UBS that Plaintiffs have failed to state a claim for breach of contract because they have failed to identify a provision of any contract that UBS breached. To state a

claim for breach of contract, a plaintiff must allege, among other things, the essential terms of the contract. *Am. W. Bank Members, L.C. v. State*, 342 P.3d 224, 231 (Utah 2014). Here, Plaintiffs have failed to identify the terms upon which they are relying as the basis for their claim. Plaintiffs allegations therefore fail to give UBS fair notice of the basis of their claim. *See id.* Accordingly, the Court finds that Plaintiffs have failed to state a claim for breach of contract.

The Court also agrees with UBS that the terms of the contract provide that Plaintiffs have waived consequential damages and therefore fail to state a claim for breach of contract, as currently pled. Damages is an essential element of a claim for breach of contract. *See id.* at 230-31. Plaintiffs allege that they suffered "consequential damages" as a result of UBS's failure to immediately cancel their card. FAC ¶ 19. But the agreements Plaintiffs entered into with UBS preclude UBS's liability for consequential damages. *See* Agreements and Disclosures booklet 9 ("UBS . . . shall not be liable to you for any reason for consequential damages arising out of your Agreement with us and/or any services we provide to you."); Account Update Document 2 ("In no event shall UBS . . . be liable to you for any reason for . . . any indirect, consequential, punitive or exemplary losses or damages arising out of your agreements with us and/or any services we provide to you[.]").

Plaintiffs' argument that the consequential damages waiver is inapplicable is unconvincing. Plaintiffs argue that the Agreements and Account Update Document are inapplicable because they "list losses for which UBS is not liable" but "do not expressly limit liability for personal injury claims." Opp'n 8-9. Plaintiffs misread the documents. They are right that it lists losses for which UBS is not liable, but the first loss listed in the Account Update Document is "any indirect special, indirect, consequential, punitive or exemplary losses or damages arising out of your agreements with us and/or any services we provide to you." *See* Ex. 5, at 2. The Court finds that the terms of the provision preclude certain types of damages, including consequential damages, without limitation to any particular type of claim.

Plaintiffs also argue that the consequential damages waiver in the Agreements is unenforceable because it is unconscionable. Plaintiffs argue that the consequential damages waiver is unenforceable under Utah Code § 70A-2-719(3), a section in Chapter 2 of Utah's

10

1  Uniform Commercial Code ("UCC"), which states that "[l]imitation of consequential damages for
2  injury to the person in the case of consumer goods is prima facie unconscionable." Opp'n 9.
3  Plaintiffs contend that UBS's "debit/credit card and appurtenant services constitute consumer
4  goods." *Id.*

5  The Court disagrees. "Goods" is defined in Chapter 2 of Utah's UCC as "all things . . .
6  which are movable at the time of identification to the contract for sale other than the money in
7  which the price is to be paid, investment securities . . . and things in action." Utah Code § 70A-2-
8  105. Neither party has provided legal support for their contention that Plaintiffs' debit card is or is
9  not a "good" under Chapter 2 of Utah's UCC. The Court finds that it need not address the
10 question because even if the debit card itself were a good, the Agreements would still be
11 predominantly for banking services, and therefore are not governed by Article 2 of Utah's UCC.
12 *See Legal Tender Servs. PLLC v. Bank of Am. Fork*, 506 P.3d 1211, 1220-21 (Utah Ct. App. 2022)
13 (applying "predominant purpose" test to determine whether an agreement involving use of an
14 online payment portal was an agreement for a good or a service). Indeed, the Agreements make
15 clear that the debit card is a feature for using a client's account, not a good that is sold to a client.
16 *See* Agreements and Disclosures booklet 27 (debit cards are "issued in connection with [client's]
17 account").

18 Finally, the Court agrees with UBS that even if the consequential damages waiver were
19 unenforceable, Plaintiffs have not alleged facts that would establish the requisite foreseeability to
20 entitle Plaintiffs to consequential damages. "To recover consequential damages, a non-breaching
21 party must prove (1) that consequential damages were caused by the contract breach; (2) that
22 consequential damages ought to be allowed because they were foreseeable at the time the parties
23 contracted; and (3) the amount of consequential damages within a reasonable certainty."
24 *Mahmood v. Ross*, 990 P.2d 933, 938 (Utah 1999). Plaintiffs have not alleged that damages
25 arising from the death of their son were foreseeable at the time they and UBS contracted.
26 Plaintiffs have therefore failed to allege an essential element of their claim for consequential
27 damages.

28 Based on the foregoing, the Court finds that Plaintiffs have failed to state a claim for

breach of contract.  Although unlikely, the Court will allow Plaintiffs the opportunity to plead around the consequential damages bar in the contract.  Accordingly, Plaintiffs' claim for breach of contract is DISMISSED WITH LEAVE TO AMEND.

## IV. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that UBS's Motion to Dismiss (ECF No. 24) is GRANTED WITH LEAVE TO AMEND.  If Plaintiffs choose to file a second amended complaint, they shall do so by no later than **February 20, 2023**.

Dated:  December 20, 2022

_____
BETH LABSON FREEMAN
United States District Judge